IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEKONNEN MEKURIA,             *

    Plaintiff,               *

v.                            *       Civil Action No. GLR-18-1267

J. ADAMS,                     *

    Defendants.             *

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants CO II Justin Adams, Sgt. William Thomas, and Lt. Thomas Sawyers'[1] Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment[2] (ECF No. 15).[3] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] Mekuria named "Sawyer" as a Defendant. It appears, however, that his last name is "Sawyers." (See Sawyers Decl., ECF No. 15-6). In addition, Mekuria only named Defendants using their surnames. Accordingly, the Court will direct the Clerk to amend the docket to reflect Adams', Thomas's, and Sawyers' full and correct names.

[2] The Motion lists CO II Jessica Custer as a Defendant. (Mot. Dismiss at 1, ECF No. 15). Custer is not a Defendant in this action. CO II Bank is. Accordingly, the Court applies the arguments in the Motion to the four Defendants in this case.

[3] Also pending before the Court is Plaintiff Mekonnen Mekuria's Motion for Reconsideration (ECF No. 6). In his Motion, Mekuria states that he wants to "add some more statement[s] to this case in order to avoid confusion." (Mot. Reconsid. at 1, ECF No. 6). Accordingly, the Court construes the Motion as a Supplement to the Complaint and will grant it.

## I. BACKGROUND[4]

Plaintiff Mekonnen Mekuria is incarcerated in the Special Needs Unit ("SNU") at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1, 5).[5] Early in the morning on August 21, 2015, Defendants Adams, Thomas, and Sawyers were conducting cell inspections. (Id. at 3). When Adams entered Mekuria's his cell, cell 11, his cellmate, Jameel, complained about Mekuria and asked Adams to move Mekuria to another cell. (Id.). After consulting with Thomas and Sawyers, Adams moved Mekuria to cell 3, which Mekuria describes as an "isolation room" and a "punishment cell." (Id.; see also Defs.' Mot. Dismiss Summ. J. ["Defs.' Mot."] Ex. 1 at 004–005, ECF No. 15-2). The toilet and sink water were "cut off" and there was "[n]o hot water" in cell 3. (Compl. Ex. 1 at 1, ECF No. 1-1). Cell 3's window was "blocked" and it had no table or chair. (Id.). Mekuria asserts that he should not have been placed in cell 3 because he had "not violated any rule" and "no ticket [was] written" to document a rules violation. (Compl. at 3). In addition, when Adams moved Mekuria from cell 11 to cell 3, there were three other cells open—1, 55, and 57. (Supp. at 1, ECF No. 6). At an unspecified point in time, when

---

[4] Unless otherwise noted, the facts outlined here are set forth in Mekuria's Complaint (ECF No. 1) and Supplement (ECF No. 6). To the extent the Court discusses facts that Mekuria does not allege in his pleadings, they are uncontroverted and the Court views them in the light most favorable to Mekuria. The Court will address additional facts when discussing applicable law.

[5] Citations to the Complaint and the Supplement refer to the pagination the Court's Case Management and Electronic Court Files ("CM/ECF") system assigned.

2

Mekuria left his cell, Sawyers, Thomas, and Adams moved his property to his old cell, cell 57. (Compl. at 3).[6] Mekuria remained in cell 3 for nineteen days. (Supp. at 1).

Mekuria appears to assert that the only reason he was removed from cell 3 is that he filed an administrative remedy procedure ("ARP") complaint. (See id.). After providing the complaint to Officer Cox, who was the tier officer, Mekuria went outside. (Id.). When Mekuria returned, his property had been moved to cell 57. (Id.).

On April 30, 2018, Mekuria sued Defendants. (ECF No. 1).[7] He alleges that Defendants violated his rights under the Fourth Amendment and Eighth Amendment to the U.S. Constitution. (Compl. at 5; Supp. at 1–2). He seeks monetary damages and injunctive relief. (Compl. at 5).

## II. DISCUSSION

### A. Conversion of Defendants' Motion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th

---

[6] Mekuria also alleges that Adams conspired with Sgt. Hite and COII Johnson, as well as Mrs. Wilson from the psychology department to cause Mekuria to sustain an erection by "electronic devices." (Supp. at 1). Mekuria further alleges that they then came to his cell door and asked him to "perform sex." (Id.). Mekuria pleads that after he refused, "they feel embarrassed and angry to revenge." (Id.).

[7] On April 30, 2018, the Court dismissed another case Mekuria filed in this Court, Mekonnen Mekuria v. Justin Adams, No. GLR-17-3176 (D.Md. closed Apr. 30, 2018), ECF No. 14. In the Order dismissing that case, the Court instructed the Clerk to docket Mekuria's amended complaint in that action as a new civil case. (Apr. 30, 2018 Order ¶ 8, No. GLR-17-3176, ECF No. 14). Accordingly, the Clerk docketed the amended complaint as the Complaint in this action. (ECF No. 1).

Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment

4

'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to

file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, both requirements for conversion have been satisfied. First, Defendants captioned their motion in the alternative, putting Mekuria on notice that the Court may convert the motion into one for summary judgment. Moret, 381 F.Supp.2d at 464. Second, Mekuria did not file a Rule 56(d) affidavit or otherwise request discovery. Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Accordingly, the Court will convert Defendants' Motion into a motion for summary judgment.

**B.**     **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would

6

be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.     Analysis**

Defendants move for summary judgment on five principal grounds: (1) Mekuria failed to exhaust his administrative remedies; (2) Mekuria fails to allege sufficient facts to state a claim; (3) sovereign immunity; (4) qualified immunity; and (5) there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. The Court agrees that Mekuria fails to state a claim for violations of his constitutional rights.

   **1.     Eighth Amendment Claim**

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime." Shakka v. Smith, 71 F.3d 162, 165 (4th Cir. 1995) (citing U.S. Const. amend. VIII). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To establish cruel and unusual punishment related to the conditions of confinement, a prisoner must prove that: (1) "the deprivation of [a] basic human need was objectively 'sufficiently serious'"; and (2) "subjectively 'the officials acted with a sufficiently culpable state of mind.'" Shakka, 71 F.3d 162 at 166 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such

punishment cannot be called "cruel and unusual." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298–300 (1991)).

The objective prong of a conditions claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka, 71 F.3d at 166 (quoting Strickler, 989 F.2d at 1381). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). As to the subjective component, there must be evidence of deliberate indifference. Wilson, 501 U.S. at 303. "A prison official demonstrates deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)).

Here, Mekuria fails to demonstrate, let alone allege, "a serious or significant physical or emotional injury" as a result of his time in cell 3. This alone is sufficient to dismiss his claim. See 42 U.S.C. § 1997e(e) (barring inmate lawsuits where there is no "showing of physical injury"); Shakka, 71 F.3d at 166. Nor does Mekuria demonstrate a substantial risk of serious harm as a result of being place in cell 3. He simply states that the cell is one used for punishment and he did not do anything to warrant being punished. (Compl. at 3). As to Mekuria's assertions that cell 3 had no water, which appear in Exhibit 1 to the Complaint, Defendants aver via a Declaration from Sawyers that cell 3

9

"has water access, and there is no report of water being turned off to the cell." (Sawyers Decl. ¶ 9, ECF No. 15-6). Sawyers further attests that corrections officials only turn off the water to a cell if an inmate is "flooding the tier," but "there is no report that [Mekuria] did so[,] nor that water access was turned off." (Id.). Mekuria does not produce any evidence to rebut these assertions. Thus, he fails to establish a substantial risk of serious harm. Because Mekuria has not satisfied the objective prong of an Eighth Amendment conditions of confinement claim, his claim fails. Accordingly, Defendants are entitled to summary judgment on this claim.

2. **Fourth Amendment Claim**

Mekuria contends that when his property was moved from cell 3 to cell 57 outside of his presence, it constituted a Fourth Amendment violation.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. A person invoking the Fourth Amendment's protections must be able to allege "a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Hudson v. Palmer, 468 U.S. 517, 525 (1984)). The law regarding the Fourth Amendment's application to prison cells and prisoners' property is well established. An inmate has no reasonable expectation of privacy, and thus no Fourth Amendment protection, in his prison cell, given 'the paramount interest in institutional security.'" Id. (quoting Hudson, 468 U.S. at 528). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and

the needs and objectives of penal institutions." Hudson, 468 U.S. at 526. Further, an intentional deprivation of an inmate's property does not violate his procedural due process rights under the Fourteenth Amendment as long as an adequate post-depravation remedy is available. Hudson, 468 U.S. at 533. A negligent deprivation of an inmate's property does not even implicate the Due Process Clause. Daniels v. Williams, 474 U.S. 327, 328 (1986).

Here, Mekuria does not even allege that he was deprived of his property—he merely alleges that corrections officers moved his property when he was not there. (Supp. at 1–2). Simply put, Mekuria's allegations do not rise to the level of a constitutional violation, whether brought under the Fourth or the Fourteenth Amendment.[8] Thus, the Court concludes that Mekuria fails to state a claim related to corrections officers moving his property.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 15). The Court will also grant Mekuria's Motion for Reconsideration (ECF No. 6). A separate order follows.

Entered this 21st day of December, 2018

/s/
George L. Russell, III
United States District Judge

---

[8] Mekuria also does not allege who moved his property. Absent a defendant or defendants, Mekuria's claim fails.